UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CIVIL ACTION NO. 5:08-CV-167-KKC

LISA BISHOP, PLAINTIFF

v. **OPINION AND ORDER**

NASSER, INC. d/b/a BROTHERS AUTOMOTIVE
SALES AND BROTHERS AUTO SALES II    DEFENDANT

\* \* \* \* \* \* \*

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment [R. 23]. For the reasons stated below, Plaintiff's motion is GRANTED in part and DENIED in part.

**I. Background**

This case arises out of the sale of a 2002 Volkswagen Beetle. Plaintiff bases her lawsuit, in part, on her assertion that Defendant's owner, Abdel Qadah, misrepresented the vehicle's actual mileage with the intent to defraud her in violation of the Federal Odometer Act. The parties present different versions of the conversation between Plaintiff and Mr. Qadah, and they disagree as to whether he properly disclosed the vehicle's actual mileage before Plaintiff agreed to purchase it.

Only the most basic facts regarding the transaction are undisputed. On April 7, 2007, Plaintiff went to Defendant's sales lot with the intention of buying a vehicle. She originally met with a salesman, Chris French, who showed her a 2002 Volkswagen Beetle. Plaintiff took the car for a test drive, during which she noticed that the odometer read approximately 8,000 miles. Plaintiff decided to purchase the vehicle, and she was introduced to Mr. Qadah, who prepared the

1

paperwork for the transaction and assisted Plaintiff with financing. While preparing the paperwork, Mr. Qadah discussed the vehicle's mileage and the purchase price. Among other things, the paperwork prepared by Mr. Qadah includes an odometer disclosure statement, in which he states that "the odometer now reads 8214 (no tenths) miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked." Just below that statement, Mr. Qadah checked the box next to the following statement: "I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits." Mr. Qadah did not check the box next to the statement "I hereby certify that the odometer reading is NOT the actual mileage. WARNING – ODOMETER DISCREPANCY."

The parties disagree over Defendant's disclosure of the vehicle's mileage. According to Plaintiff, neither Mr. French nor Mr. Qadah informed her that the actual mileage of the vehicle was unknown. Plaintiff also asserts that Mr. Qadah told her that he should raise the price of the vehicle because the mileage was so low and that she was getting a good price on the vehicle. Based on these statements and the odometer reading, Plaintiff alleges that she believed that the vehicle had approximately 10,000 miles and purchased it based on that belief.

Mr. Qadah presents a different story. He claims that he informed Plaintiff that the vehicle's odometer was wrong and that its actual mileage was close to 56,000. He points out that the retail price of a 2002 Volkswagen Beetle with 56,000 miles in April of 2007 was roughly $13,000, and he claims that the vehicle was listed for $12,900. He states that he told Plaintiff that if the vehicle had only 8,000 miles on it, he would have listed it for much more money. Further, he claims that he offered to print Plaintiff a copy of the vehicle's CarFax report and

offered to let her to take the vehicle to a mechanic, both of which she refused. Mr. Qadah also notes that he checked box one on the odometer disclosure statement which indicates that the listed mileage was in excess of the vehicle's mechanical limits. He asserts that he did so because he did not know exactly how many miles were on the vehicle and wanted to inform Plaintiff that it could have an unlimited number of miles.

Plaintiff now moves for summary judgment on two issues. First, she argues that Mr. Qadah violated two provisions of the Federal Odometer Act, 49 U.S.C. §§ 32701, et seq., by checking the wrong box on the odometer disclosure statement provided to her at the time of purchase. Second, she argues that he did so with the intent to defraud her.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). However, a court cannot weigh the evidence or make findings of fact. *Id.* at 1435-1436.

## III. Analysis

### A. The Odometer Disclosure Statement

The Federal Odometer Act imposes the following written disclosure requirement on transferors of motor vehicles:

Under regulations prescribed by the Secretary of Transportation that include the way in

> which information is disclosed and retained under this section, a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure:
>    (A) Disclosure of the cumulative mileage registered on the odometer.
>    (B) Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled.

§ 32705(a)(1). Corresponding regulations further define the disclosure requirement, and state:

> (1) The transferor shall certify that to the best of his knowledge the odometer reading reflects the actual mileage, or;
> (2) If the transferor knows that the odometer reading reflects the amount of mileage in excess of the designed mechanical odometer limit, he shall include a statement to that effect; or
> (3) If the transferor knows that the odometer reading differs from the mileage and that the difference is greater than that caused by odometer calibration error, he shall include a statement that the odometer reading does not reflect the actual mileage, and should not be relied upon. This statement shall also include a warning notice to alert the transferee that a discrepancy exists between the odometer reading and the actual mileage.

49 C.F.R. § 580.5(e). Additionally, "[a] person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation." § 32705(a)(2).

Both parties point to the odometer disclosure statement Defendant gave Plaintiff on the date of purchase as the written disclosure required by the Federal Odometer Act. [R. 23, Attach. #4, Odometer Disclosure Statement]. As discussed, this document states that the vehicle's odometer read 8,214 on the date of sale. [Id.] Mr. Qadah also checked the box next to the statement "I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits." [Id.]. He did not check the box next to the statement "I hereby certify that the odometer reading is NOT the actual mileage. WARNING – ODOMETER DISCREPANCY." [Id.]. In his affidavit, he states that he "did not know how many miles were on the car exactly, and [he] wanted to make sure [Plaintiff] knew that there

4

could be an unlimited number of miles." [R. 26, Attach. #2, Declaration of Abdel Qadah]. He also states that he "informed [Plaintiff] that the odometer was wrong and that the vehicle's actual mileage was close to 56,000 miles." [Id.].

Based on the foregoing, Defendant violated the Federal Odometer Act's written disclosure requirement by checking the first, and not the second, box on the odometer disclosure statement. By checking the first box, Mr. Qadah certified that the odometer reading was in excess of its mechanical limits. When read with the corresponding regulation, this indicates that the *vehicle's* mileage was in excess of the *odometer's* mechanical limits. In other words, the odometer rolled over. Mr. Qadah therefore certified that the vehicle's mileage was either 108,214 (if the odometer reads to 99,999 miles) or 1,008, 214 (if the odometer reads to 999,999 miles). However, he states in his affidavit that he thought the vehicle's actual mileage was close to 56,000 miles. The affidavit therefore establishes that Mr. Qadah misrepresented his knowledge of the vehicle's mileage on the odometer disclosure statement. Thus, the odometer disclosure statement violates § 32705(a) and the corresponding regulations.

Defendant argues against a strict application of the statute in this case because Plaintiff was not misled about the fact that the miles on the odometer were wrong. Even relying on Defendant's claim that Mr. Qadah informed Plaintiff that the vehicle had 56,000 miles, Mr. Qadah nonetheless misrepresented his knowledge of the vehicle's mileage on the odometer disclosure statement. As § 32705(a) requires accurate written disclosures regarding vehicle mileage, contemporaneous oral statements will not cure a written violation.

Additionally, Defendant argues that although inaccurate, the odometer disclosure statement significantly overstates the vehicle's mileage, and thus Mr. Qadah did not have the

5

intent to defraud Plaintiff. While Mr. Qadah's subjective intent to defraud is relevant when determining civil liability under § 32710(a), it is not addressed by § 32705(a). Accordingly, analysis of Mr. Qadah's subjective intent is reserved for the following section.

**B. The Intent to Defraud**

The Federal Odometer Act allows for civil actions by private persons as follows:

> A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $ 1,500, whichever is greater.

§ 32710(a). Therefore, Plaintiff must prove that Defendant violated the Federal Odometer Act with the intent to defraud her. Plaintiff presents two arguments in support of summary judgment on this issue. First, citing *Nabors v. Auto Sports Unlimited, Inc.*, 475 F. Supp. 2d 646 (E.D. Mich. 2007), she argues that because Defendant knowingly violated § 32705(a), it necessarily did so with the intent to defraud her as required by § 32710(a).

Plaintiff's first argument fails because it inappropriately equates actions that *may* establish fraudulent intent with actions that *necessarily* establish fraudulent intent. In *Nabors*, when considering the minimum level of culpability required to demonstrate an intent to defraud, the court stated that "[i]n order to show an intent to defraud under the [Federal Odometer] Act, Plaintiff must show an intentional violation or that [the defendant] exhibited a reckless disregard for the truth as to the [vehicle's] mileage." *Id.* at 652. Stated differently, negligent conduct cannot establish an intent to defraud. The court ultimately found that the plaintiff failed to demonstrate that one defendant had the required mental state because its conduct was, at most, negligent. *Id.* at 654. As the court did not address an intentional violation of the Federal Odometer Act, it had no grounds to conclude that such a violation necessarily establishes

6

fraudulent intent as Plaintiff argues.

Further, analysis of the common law elements of fraud contradict Plaintiff's argument that Mr. Qadah's intentional misrepresentation necessarily establishes fraudulent intent. As the *Nabors* court noted, the common law elements of fraud are:

> (1) a false representation made by the defendant; (2) knowledge or belief on the part of the defendant that the representation is false; (3) an intention to induce the plaintiff to act or refrain from action in reliance upon the misrepresentation; (4) justifiable reliance upon the representation; and (5) damages caused by the reliance.

*Id*. (quoting PROSSER & KEETON ON TORTS § 105 at 728 (5th ed. 1984)). Examining the last three elements, the intent to defraud can be paraphrased as an intent to induce justifiable and damaging reliance. In this case, Defendant's intentional misrepresentation is inconsistent with an intent to defraud because the misrepresentation would not logically induce damaging reliance. As discussed, Mr. Qadah violated § 32705(a) by intentionally *overstating* the vehicle's mileage. In general, higher mileage vehicles cost less, all else being equal. Thus, by overstating a vehicle's mileage, a salesperson generally expects a customer to pay less than if the salesperson accurately discloses the vehicle's mileage. In such a case, the customer is not damaged by the misrepresentation; rather, he or she receives a benefit because of it. Given this, one cannot reasonably assume that a salesperson intends to defraud a customer by intentionally overstating a vehicle's mileage because such misrepresentations normally benefit the customer, not the salesperson. Accordingly, when drawing reasonable inferences from the undisputed facts, Defendant's misrepresentation of the vehicle's mileage does not demonstrate an intent to defraud as Plaintiff argues. Therefore, Plaintiff is not entitled to judgment on this issue based solely on the fact that Mr. Qadah knowingly violated § 32705(a).

In her second argument, Plaintiff points to the facts presented in Mr. Qadah's affidavit as evidence of his intent to defraud her. As mentioned, Mr. Qadah claims that he told Plaintiff that the vehicle had 56,000 miles although his certified statement on the odometer disclosure statement significantly overstates the vehicle's mileage. Plaintiff concludes that the only explanation for Mr. Qadah's inconsistent representations is that he intended to confuse and mislead her, thus evidencing his intent to defraud her. However, Mr. Qadah's affidavit provides another explanation for the inaccurate statement on the odometer disclosure statement: he "wanted to make sure that [Plaintiff] knew that there could be an unlimited number of miles." In other words, he wanted to make sure that Plaintiff did not purchase the vehicle on the mistaken belief that it had either 8,000 miles as the odometer indicated or 56,000 miles as he had told her. Further, it appears that he successfully prevented Plaintiff from relying on any mileage representations because she paid only $9,900, which, according to Mr. Qadah's affidavit, is significantly less than a 2002 Volkswagen Beetle with 56,000 miles would have sold for. In sum, taking the facts as presented in Mr. Qadah's affidavit as true, he did not misrepresent the vehicle's mileage on the odometer disclosure statement with the intent to defraud Plaintiff. Rather, he used the odometer disclosure statement to prevent her from relying on either the odometer or his estimate of the vehicle's mileage. Here, the facts are in dispute. Accordingly, Plaintiff is not entitled to summary judgment on this issue based on the facts as stated in Mr. Qadah's affidavit.

**IV. Conclusion**

For the reasons discussed, the Court hereby ORDERS that Plaintiff's Motion for Summary Judgment [R. 23] is GRANTED in part and DENIED in part as follows:

a) The motion is GRANTED as to Plaintiff's claim that the odometer disclosure statement violates 49 U.S.C. § 32705(a); and

b) the motion is DENIED as to Plaintiff's claim that Defendant violated 49 U.S.C. § 32705(a) with the intent to defraud her.

Dated this 18th day of June, 2009.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge